# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SONNIEL GIDARISINGH,
     Plaintiff,

v.                           Case No. 08-C-0082

SGT MALONE, CO II BECKER, SGT HART,
JENNY FUERSTENBERG, CO II HAYNES,
DONALD STRAHOTA, CO II KELLER,
SGT GARRISON, CO II VAN BUREN, and
CORRECTIONAL OFFICER BUWALDA,
     Defendants,

## DECISION AND ORDER

     Plaintiff Sonniel Gidarisingh, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before me on plaintiff's motion for leave to proceed in forma pauperis and for screening of the complaint. In an order dated February 27, 2008, I allowed plaintiff to proceed without payment of an initial partial filing fee. See 28 U.S.C. § 1915(b)(4). I will now grant plaintiff's motion for leave to proceed in forma pauperis.

     Additionally, I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

     A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325

(1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). I may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, I must accept as true all of the factual allegations contained in the complaint. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." Id. at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Erickson, 127 S. Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## I. COMPLAINT AVERMENTS

Plaintiff is a Wisconsin state prisoner, and his claims arise out of events that occurred while he was incarcerated at Columbia Correctional Institution (CCI) and Waupun Correctional Institution (WCI). Defendants Malone, Becker and Hart are all correctional officers at CCI. Defendant Fuerstenberg was a social worker at WCI. Defendants Haynes, Keller, Van Buren, Garrison and Buwalda are all correctional officers at WCI. Defendant Strahota is the security director at WCI.

**Claim 1 - Temporary Lock Up - CCI (Becker and Malone)**

On January 6, 2006, plaintiff was put in temporary lock up in unit 8, cell 6 at CCI. (Compl. ¶ 8.) While in temporary lock up, plaintiff noticed that one of the three unit 8 kitchen workers was sick and coughing. (Compl. ¶ 9.) The kitchen workers are inmates who go to the main CCI kitchen, pick up the meals in bulk and serve the meals to the inmates housed in unit 8. Id. The sick inmate was named Chauncy Ott (prisoner number #292976), and he was housed in cell 7, across from plaintiff. (Compl. ¶ 10.) Plaintiff alleges that Ott was "constantly coughing days and nights and coughing up mucus sounding matter." Id. Plaintiff became concerned for his own health because he was confined to his cell twenty-four hours a day and Ott handled plaintiff's meals and sometimes brought meals to plaintiff's cell uncovered. (Compl. ¶ 11.) Plaintiff asked Ott at least twice why he was coughing so much and told Ott "in a low and respectful tone" that he "must allow the other two inmates Mitchell #310162 or Diaz #307340 to handle and bring my meals to me, instead of him, because he is clearly sick." (Compl. ¶ 12.) Plaintiff avers that Ott ignored his request and continued to bring plaintiff's meals, which plaintiff refused to eat. (Compl. ¶ 13.)

3

Plaintiff alerted CO II Becker of Ott's constant coughing and asked Becker to keep Ott out of the unit 8 kitchen and to keep Ott from handling plaintiff's meals or bringing them to him. (Compl. ¶ 13.) Plaintiff asked Becker to let one of the other two kitchen servers handle his meals and bring them to him instead of inmate Ott. (Compl. ¶ 14.) Becker continued to have Ott bring plaintiff his meals. (Compl. ¶ 15.) Plaintiff alleges this was a deliberate act by Becker, and he refused to accept the uncovered meals or eat them. Id. Plaintiff contends that Ott "would intentionally state over the uncovered meal 'are you going to eat' while CO II Becker stand behind inmate Ott at my cell #6 and have a smirk on his (CO II Becker) face." Id. Plaintiff asserts that this deliberate act continued from January 6, 2006 until January 21, 2006. (Compl. ¶ 16.)

Plaintiff alleges that on one day during that time, when CO II Becker allowed Ott to bring plaintiff his meal, Ott asked plaintiff if he was going to eat and plaintiff did not accept the meal. (Compl. ¶ 17.) When Ott and Becker walked away, plaintiff heard Becker say, "lets see how long Gidarisingh won't eat," and "both inmate Ott and Defendant Becker began to laugh at what Defendant Becker said." Id. On January 20, 2006, Becker allowed Ott to bring plaintiff his meal at breakfast and "then at lunch time CO Becker did not bring my lunch, nor did anyone bring any lunch to me ... or even ask me if I wanted lunch." (Compl. ¶ 18.)

On January 21, 2006, plaintiff alleges that Becker did not ask plaintiff if he wanted breakfast. (Compl. ¶ 19.) Plaintiff then saw Becker and asked Becker for his breakfast. Id. Defendant Becker responded "loudly in a angry tone 'I am not giving you shit.'" (Compl. ¶ 20.) Plaintiff replied to Becker, "it is a part of your duty to see to it I get my meal while I am in T.L.U. status and that it is illegal for you to deprived me of my meal and that I was going

4

to file a complaint against him." Id. Defendant Becker responded, "What do you think a complaint is going to do." (Compl. ¶ 21.) Plaintiff alleges he neither received nor was offered breakfast on January 21, 2006. Id. Plaintiff avers that at lunch Becker came to plaintiff's cell and asked him if he wanted lunch. (Compl. ¶ 22.) Plaintiff said yes, but he never received lunch. Id. During the next shift, plaintiff told CO I Schaefer that he was refusing meals because Ott was sick, and Schaefer heard Ott coughing. (Compl. ¶ 23.) Schaefer had an inmate other than Ott bring plaintiff his supper on January 21, and plaintiff ate. Id.

Sgt. Malone was Becker's superior and worked the same days and shifts as Becker. (Compl. ¶ 24.) Plaintiff alleges that Malone knew what Becker was doing and did nothing. Id. Plaintiff also alerted Malone of Ott's sickness and Becker "depriving" him of his meals and Malone did nothing. Id. Plaintiff remained in temporary lock up until January 23, 2006; while there, he was dizzy and weak and felt hunger pangs and stomach pain because he was deprived of meals. (Compl. ¶¶ 25-26.) Plaintiff avers that he has exhausted his administrative remedies relative to this claim.

**Claim 2 - Disciplinary Segregation - CCI (Hart)**

On January 23, 2006, plaintiff was placed in Disciplinary Segregation One (DS-1), a segregation unit at CCI. (Compl. ¶ 35.) After he was transferred, plaintiff began to cough and choke and was having difficulty breathing. Id. Plaintiff alleges that he was placed in an unsanitized cell that "had an overpowering smell of human feces and urine including chemical tear gas fumes like substance." Id. Plaintiff alerted Sgt. Delong and CO II Tremble during the first shift on January 23. (Compl. ¶ 36.) He told them that he was diagnosed with asthma in 2003 and the conditions were triggering his asthma; he was having problems

5

breathing and coughing constantly. Id. Plaintiff asked Sgt. Delong to move him to another cell that was cleaned, and Sgt. Delong stated: "You are in DS-1 for 1 hour and already you are whining" and walked away. Id.

During the second shift on January 23, 2006, plaintiff sent a handwritten note to Sgt. Hart and alerted her of his asthma and the problems he was having due to the unsanitized cell. (Compl. ¶ 37.) Plaintiff had not received a response when he saw Sgt. Hart during rounds about three hours later. (Compl. ¶ 38.) He verbally alerted Sgt. Hart and told her he was having difficulty breathing and was coughing due to the conditions in his cell. Id. Plaintiff requested his nebulizer machine with liquid albuterol, which had been prescribed for him. Id. Plaintiff also asked to see the prison nurse because he was having difficulty breathing. Id. Plaintiff alleges that Hart walked away and never gave plaintiff his nebulizer. (Compl. ¶ 39.) Plaintiff also asserts that Hart never relayed his request to see the nurse because a nurse did not come to see him at any time on January 23. Id.

Plaintiff suffered an asthma attack during the third shift on January 23, 2006. (Compl. ¶ 40.) Other inmates alerted Sgt. Morrison, the third shift supervisor. Id. Sgt. Morrison came to plaintiff's cell and saw his condition. (Compl. ¶ 41.) Sgt. Morrison left and returned with an unknown guard and Security Supervisor (Lt.) Keller. (Compl. ¶ 42.) They removed plaintiff from his cell and gave plaintiff his nebulizer in the day room area of DS-1. Id. Plaintiff informed Keller of the problems with his cell, and Keller assured plaintiff that he would be moved to a cleaner cell on first shift on January 24, 2006. Id.

On January 24, during first shift, plaintiff began to have difficulty breathing and was coughing again. (Compl. ¶ 43.) Sgt. Delong moved plaintiff to another cell and let him use his nebulizer. Id. Plaintiff also had problems breathing during the second shift on January

6

24. (Compl. ¶ 45.) He saw Sgt. Hart and requested his nebulizer machine; she said "no." Id. Plaintiff explained to Hart that he needed the nebulizer, and she "then yelled angrily at plaintiff, 'thats enough from you,'" and walked away. Id. Hart did not give plaintiff his nebulizer treatment during the second shift on January 24. Id.

During the second shift on January 25, 2006, plaintiff requested his nebulizer from CO Bittleman, who said "ok," and an unknown guard who said "alright." (Compl. ¶ 48.) Neither returned immediately. Id. An hour later, plaintiff saw Hart and asked for his nebulizer. (Compl. ¶ 49.) Hart gave plaintiff a "mean" look and walked away; she did not give plaintiff his nebulizer treatment during the second shift.[1] Id. During the third shift on January 25, 2006, plaintiff asked CO Gilmore for his nebulizer treatment. (Compl. ¶ 50.) Sgt. Morrison returned five minutes later and allowed plaintiff to use his nebulizer treatment. (Compl. ¶ 51.) Plaintiff asserts that he has exhausted his administrative remedies regarding Hart's actions. (Compl. ¶¶ 53-54.)

**Claim 3 - Retaliatory Conduct Report - WCI (Fuerstenberg and Strahota)**

On May 2, 2006, plaintiff was transferred back to WCI, where he had been incarcerated before his transfer to CCI. (Compl. ¶ 55.) He attended an orientation on May 9, 2006 for inmates arriving at WCI from other institutions. (Compl. ¶ 56.) On the same day, plaintiff wrote a letter to defendant Fuerstenberg asking her to be plaintiff's prison social worker. (Compl. ¶ 57.) Plaintiff stated that he requested Fuerstenberg as his prison social

---

[1] Plaintiff believes . Hart was retaliating against him for another federal lawsuit he filed in the Eastern District of Wisconsin, Case No. 04-C-0038. (Compl. ¶ 52.) He has amended his complaint in that case to include a retaliation claim against Hart and is not alleging retaliation in this complaint. Id.

7

worker because he needed help to locate his biological daughter who he had not seen in over five years. (Compl. ¶ 58.) Plaintiff also made the request because Fuerstenberg was familiar with him and helping him communicate with his family. Id. He maintains his request was not inappropriate. (Compl. ¶ 59.) However, Fuerstenberg filed a complaint against plaintiff for "soliciting staff." (Compl. ¶ 60.) Plaintiff alleges the complaint was false. Id. Defendant Strahota reviewed and approved the complaint. Plaintiff was found guilty, and he received twenty-five days loss of recreation privilege as punishment. (Compl. ¶¶ 71-72.)

Plaintiff was a witness to security staff misconduct towards another inmate, Matthew Sanville, in July 1998. (Compl. ¶ 62.) Sanville later committed suicide next door to plaintiff. Id. Counsel for Sanville's family asked plaintiff to participate in a deposition in April 2002. (Compl. ¶ 66.) Plaintiff alleges he has suffered "numerous retaliatory acts" since testifying at the deposition. Id. A jury ultimately awarded the Sanville family $1.8 Million. Id. Plaintiff believes Fuerstenberg filed the conduct report against him in retaliation for his involvement in the Sanville lawsuit, because one of her colleagues was a defendant in the case. (Compl. ¶¶ 68-70.) Defendant Strahota is a defendant in another case filed by plaintiff arising out of his involvement in the Sanville lawsuit. (Compl. ¶ 71.)

**Claim 4 - Retaliatory Conduct Report - WCI (Haynes and Strahota)**

Plaintiff alleges that on July 30, 2006, he was attacked on the outside small recreation field by another inmate. (Compl. ¶ 74.) Plaintiff was taken to the WCI segregation unit and served the following day with a conduct report written by defendant Haynes. (Compl. ¶ 75.) Plaintiff alleges the conduct report was false and that defendants Haynes and Strahota failed to properly investigate the incident. (Compl. ¶¶ 75-79.) He maintains the conduct report was in retaliation for plaintiff's participation in the Sanville lawsuit, and his other

8

federal lawsuit pending in the Eastern District of Wisconsin, Case No. 04-C-0038. (Compl. ¶ 79.) Plaintiff was found guilty of "fighting" by Capt O'Donovan, who is also a defendant in plaintiff's other federal lawsuit. (Compl. ¶ 80.) Plaintiff was given 120 days in WCI Segregation. Id.

### Claim 5 - Showers - WCI (Keller)

Plaintiff alleges that defendant CO II Keller harassed him while he was in segregation by turning off the water while plaintiff was showering. (Compl. ¶ 83.) On September 27, 2006, plaintiff heard Keller telling an unknown guard to skip plaintiff for his twice weekly shower. Id. Plaintiff complained verbally and in writing regarding these events. Id. Plaintiff alleges Keller turned off his water early in retaliation for plaintiff's involvement in the Sanville litigation and for his other federal lawsuit. (Compl. ¶¶ 85-86.)

### Claim 6 - Cell Search - WCI (Van Buren and Garrison)

On January 7, 2007, plaintiff was in the WCI general population. (Compl. ¶ 88.) Around 9:00 a.m., plaintiff's cell door opened for plaintiff to attend the prison protestant church service at WCI. (Compl. ¶ 89.) While he was coming down the stairs, plaintiff saw defendant Buwalda look at him and make a signal to defendant Van Buren. (Compl. ¶¶ 90-91.) When plaintiff returned from the chapel, defendant Garisson called plaintiff. (Compl. ¶ 93.) Defendant Van Buren then asked plaintiff to sign a property disposition form, and plaintiff refused. Id. Plaintiff returned to his cell, where he found his door wide open, his light turned on and all of his personal property taken out of his locker and thrown on the floor. Id. Plaintiff went back down the stairs and requested the "cell search card," which indicated that defendants Buwalda and Van Buren searched and tore apart plaintiff's cell

9

while he was attending church service. (Compl. ¶ 94.) Plaintiff asked Garrison to come and view his cell. (Compl. ¶ 95.) He also asked the first shift security supervisor to "come view the destruction of plaintiff cell and take picture evidence to the deliberate and malicious acts of defendants Buwalda and Van Buren committed." Id.

When Garrison came to plaintiff's cell about a half an hour later, Garrison told plaintiff the cell search was proper. (Compl. ¶ 96.) Plaintiff told Garrison that he had filed a number of complaints against Buwalda and that he had amended his other federal lawsuit to add Buwalda as a defendant in November 2006. Id. Plaintiff avers: "Defendant Garrison got angry and state he doesn't care about any lawsuit and walk away." (Compl. ¶ 97.) No security supervisor came to view plaintiff's cell on first or second shift, despite a renewed request. Id. Plaintiff asserts that Buwalda harassed him in retaliation for the Sanville lawsuit and his other federal case. (Compl. ¶ 98.) Plaintiff states that on May 4, 2006, upon his return to WCI, Buwalda saw him and said, "Oh, you are back, you will be going to the hole (segregation) soon." Id. Plaintiff states that he has amended the complaint in his other federal case to include the above allegations against defendant Buwalda, and therefore is not asserting a claim against Buwalda here as related to the above assertions. (Compl. ¶ 99.)

### Claim 7 - Assault - WCI (Buwalda, Van Buren and Garrison)

On January 16, 2007, Buwalda came to plaintiff's cell door trap around 9:20 a.m.; the door was open because plaintiff was getting ready to leave for a 9:30 a.m. appointment with the prison psychologist. (Compl. ¶ 102.) As plaintiff exited his cell, he saw Buwalda hiding in an unoccupied cell and sticking his face out of the cell door watching plaintiff. (Compl. ¶ 103.) Plaintiff continued to walk toward the stairs, and he had to turn sideways to avoid

making contact with Buwalda's face. (Compl. ¶ 104.) As plaintiff passed sideways, Buwalda continued staring at plaintiff. (Compl. ¶ 105.) Buwalda then stepped out of the unoccupied cell and "deliberately and maliciously" stepped hard on the right heel of the plaintiff, causing pain. Id. When plaintiff turned around, Buwalda walked up "inches from plaintiff's face in an aggressive manner" and stated "yeah good morning." (Compl. ¶ 106.) Plaintiff believed Buwalda was trying to goad plaintiff into a fight, but plaintiff walked away. Id.

Plaintiff reported the "assault" to the psychologist, an unknown guard in the psychological services unit and an unknown guard in the social service department. (Compl. ¶ 107.) Plaintiff also reported the incident to Sgt. Garrison and asked to see the first shift supervisor. Id. Garrison yelled at the plaintiff that he would not see any security supervisor and ordered plaintiff to return to his cell. Id. Plaintiff removed his shoes and socks when he returned to his cell, and the first layer of skin on the plaintiff's heel was rubbed off. (Compl. ¶ 109.) Plaintiff believe this incident was in retaliation for the complaint filed after the January 7 cell search. Id. He also alleges that Garrison and Van Buren conspired to retaliate against plaintiff.

## II. ANALYSIS

Plaintiff's complaint identifies ten defendants and relates to a number of different events that occurred at two separate prisons. Plaintiff lays out the following seven claims: (1) an Eighth Amendment deliberate indifference and cruel and unusual punishment claim against defendants Becker and Malone for deprivation of meals while in temporary lock up at CCI; (2) an Eighth Amendment deliberate indifference and cruel and unusual punishment claim against defendant Hart regarding her repeated refusals to allow plaintiff to use his nebulizer treatment; (3) a retaliation claim against defendants Fuerstenberg and Strahota

11

relating to a conduct report in response to his letter because plaintiff had exercised his rights under the First and Fourteenth Amendments; (4) a retaliation and conspiracy claim against defendants Haynes and Strahota that plaintiff was set up to be assaulted by another prisoner and, as a result, received a conduct report and time in segregation because he had exercised his rights under the First and Fourteenth Amendment; (5) a retaliation claim against defendant Keller alleging Keller cut plaintiff's showers short because plaintiff had exercised his rights under the First Amendment; (6) a conspiracy and retaliation claim against defendants Van Buren and Garrison that they conducted an illegal and/or excessive cell search on January 7, 2007, because plaintiff had exercised his rights under the First Amendment; and (7) a conspiracy and retaliation claim against defendants Van Buren, Garrison and Buwalda that Buwalda assaulted plaintiff on January 16, 2007, in an attempt to incite violence, because plaintiff had exercised his rights under the First Amendment. Plaintiff also sets forth corresponding state law allegations for the claims.

Based on my reading of plaintiff's complaint, it appears that he is attempting to improperly bring unrelated claims in a single case. As instructed by the Court of Appeals in <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007), under the controlling principle of Federal Rule of Civil Procedure 18(a), "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. <u>Id.</u> at 607. Specifically, Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Under this rule, "multiple claims against a single party are fine, but Claim A against

12

Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607.

Moreover, the Court of Appeals in George reminded district courts that Federal Rule of Civil Procedure 20 applies as much to prisoner cases as it does to any other case. 507 F.3d at 607. Under Rule 20, joinder of multiple defendants into one action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

I find that plaintiff's complaint violates Rules 18 and 20 insofar as it advances unrelated claims against multiple defendants at two separate prisons. The George court instructed that such "buckshot complaints" should be "rejected." George, 507 F.3d at 607. Therefore, I will strike the original complaint submitted on January 23, 2008. Plaintiff will be allowed to file an amended complaint in this case incorporating only properly related claims. Any unrelated claim not pursued in this case must be brought in a separate action. Plaintiff should carefully consider the claims which he intends to pursue in this case because in a multi-claim, multi-defendant suit, each claim will be evaluated for the purpose of 28 U.S.C. § 1915(g). When any claim in a complaint is frivolous, malicious or fails to state a claim upon which relief can be granted, the plaintiff will incur strikes. See George, 507 F.3d at 607.

Plaintiff is advised that because an amended complaint supercedes a prior complaint, any matters not set forth in the amended complaint are then, in effect, withdrawn. See Duda v. Board of Educ., 133 F.3d 1054, 1056 (7th Cir. 1998). If plaintiff files an amended

13

complaint, it will become the operative complaint in this action, and I will screen it in accordance with 28 U.S.C. § 1915A.

Further, plaintiff is advised that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. See Pacelli v. deVito, 972 F2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. Id. Thus, with respect to any claim or claims advanced in his amended complaint, plaintiff must identify the individual defendants and specify the manner in which their actions, or failure to take action, violated his constitutional rights.[2]

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket #3) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint submitted on January 23, 2008 is hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that the plaintiff is directed to file an amended complaint on or before October 10, 2008, which contains only related claims in accordance with this decision and order.

---

[2] Plaintiff's original complaint properly identified specific individuals involved in particular claims. I include this reminder to aid plaintiff as he drafts an amended complaint in this case and/or complaints in separate actions.

14

**IT IS FURTHER ORDERED** that if plaintiff does not file an amended complaint by October 17, 2008, that complies with the requirements of Rules 18 and 20, Federal Rules of Civil Procedure, this action will be dismissed, without prejudice, for failure to prosecute

Dated at Milwaukee, Wisconsin, this 14 day of September, 2008.

/s_____
LYNN ADELMAN
District Judge